# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

AFFORDABLE BAIL BONDS, INC., et al., )
                                         )
        Plaintiffs,       )
v.                                  )      Case No. 14-CV-332-JED-FHM
                                         )
TULSA COUNTY SHERIFF'S   )
OFFICE, et al.                   )
                                       )
        Defendants.     )

## OPINION AND ORDER

Before the Court is the Defendants' Motion to Dismiss Complaint (Doc. 16). Defendants argue that Plaintiffs' claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiffs have submitted a Response (Doc. 17), and Defendants have filed a Reply (Doc. 18).

**I.      Plaintiffs' Allegations**

The following is a summary of Plaintiffs' factual allegations:

Plaintiff Roberta Dampf-Aguilar ("Dampf-Aguilar") is a licensed professional bail bondsman, and she operates her bail bond business through Affordable Bail Bonds, Inc. ("Affordable"), located in Tulsa, Oklahoma. Plaintiff Terry J. Horton ("Horton") was an employee of Affordable during the relevant time. Horton had previously been a licensed bail bondsman but was not licensed at the time.

Plaintiffs allege that Affordable and Dampf-Aguilar received disparate treatment from the Tulsa County Sheriff's Office ("TCSO") for many years. They believe that this treatment stems from animosity between Dampf-Aguilar and another bail bondsman, Rusty Roberts ("Roberts"). Roberts, in turn, allegedly received preferential treatment from the TCSO, which included being allowed to distribute business cards at the Jail.

1

On or about February 14, 2014, members of the TCSO entered Affordable's business and arrested employee Jack Scheving ("Scheving") on an outstanding warrant relating to unpaid fines. Scheving was then interrogated by the TCSO and pushed to cooperate with TCSO's investigation of Dampf-Aguilar and Affordable. On February 19, 2014, the TCSO obtained a search warrant to search Affordable's business. According to the search warrant, law enforcement officers were permitted to search for and collect the following: computers, computer systems, data, and other computer-related property; any locked compartment, file cabinet, desk drawer, safe, or closet capable of storing paper documents; employee records; employee work schedule histories; policies and procedures that reflect Affordable's day-to-day operations; and files relating to business transactions on bonds generated by individuals employed at Affordable.

The search warrant was obtained based on an affidavit sworn by Defendant Greg Brown ("Brown"), a detective with the TCSO. The affidavit stated that there was probable cause for the issuance of the warrant because Scheving was a convicted felon who would construct and prepare bail bond contracts without being given the power to do so by the State of Oklahoma. The affidavit also stated that it was common practice at Affordable to accept payments from individuals despite having knowledge that those individuals had ICE holds and would not be released. Lastly, the affiant asserted that he "strongly believe[d] Mr. Scheving was within the scope of his employment and signed bail bonds on behalf of Mrs. Roberta Ann Dampf-Aguilar during his assigned shift as a supervisor with Affordable Bail Bonds." (Doc. 3-2 at 3).

Defendant Major Thomas Huckeby ("Huckeby") led a group of about ten members of the TCSO who executed the search warrant on February 19, 2014. The group searched Affordable's premises and confiscated numerous files and other property, including computers and a server. The TCSO officers also utilized a K-9 during the search. At the conclusion of the search, Horton

was arrested on allegations that he was performing acts of a bail bondsman without a license, in violation of *Okla. Stat.* tit. 59, § 1311.3(A). Horton was booked in the Tulsa County Jail on a felony complaint and was initially held without bond. Later, his bail was set by a Tulsa County District Court Judge at $5,000.

The next day, on February 20, 2014, the TSCO arrested Dampf-Aguilar on a charge of permitting Horton to perform acts of a bail bondsman without a license. Dampf-Aguilar's license to act as a bail bondsman was temporarily suspended until the Tulsa County District Court held that the prosecution lacked probable cause to charge either her or Horton with a crime.

## II. Dismissal Standards

In ruling on a motion to dismiss for failure to state a claim, "the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). However, plaintiffs must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id*. at 1104 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint that merely "'tenders naked assertion[s]' devoid of 'further factual enhancement'" does not satisfy the pleading standard. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

## III. Analysis

### A. Preliminary Issue

The first named defendant in Plaintiffs' Complaint is the "Tulsa County Sheriff's Office." (*See* Doc. 1). As noted by Defendants, the Sheriff's Office is not a legally suable entity. *See Lindsey v. Thomson*, 275 F. App'x 744, 747 (10th Cir. Sept. 10, 2007) (unpublished); *Reid v.*

3

*Hamby*, No. 95-7142, 1997 WL 537909, at *6 (10th Cir. Sept. 2, 1997) (unpublished) ("We now hold that an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit."); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit[.]"). In fact, under *Okla. Stat.* tit. 19, § 4, suits against a county in Oklahoma must be brought against the board of county commissioners.

Plaintiffs have requested leave to amend, but the Court finds such amendment unnecessary where Plaintiffs are already bringing the same claims against the Tulsa County Sheriff in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). For this reason, the Court denies Plaintiffs request and hereby dismisses Plaintiffs' claims against the Tulsa County Sheriff's Office.

The Court will now proceed by examining the sufficiency of Plaintiffs' factual allegations as to former Tulsa County Sheriff Stanley Glanz in his individual capacity and current Sheriff Vic Regalado in his official capacity. The Court will then address Plaintiffs' claims as to the remaining individual defendants: Thomas Huckeby, Eric Kitch, and Greg Brown.

### B. Stanley Glanz – Individual Capacity

In order to state a plausible claim against Glanz in his individual capacity, Plaintiffs must allege facts showing that Glanz was personally involved in the underlying constitutional violation through his own participation or supervisory control. *Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018). The only allegations in the Complaint specifically mentioning Glanz are the following:

- "Defendant Stanley Glanz is the elected Sheriff of Tulsa County, State of Oklahoma." (Doc. 1 at ¶ 5).
- "Despite knowledge of the ongoing disparate treatment of Affordable, Dampf-Aguilar and Horton, TCSO and Sheriff Stanley Glanz have failed to

4

- sufficiently monitor and supervise those empowered by the badge and rank bestowed upon them by TCSO and Glanz." (*Id*. at ¶ 51).
- "Further, Affordable and Dampf-Aguilar's constitutional rights were violated by the acts of the TCSO, Glanz, Huckeby, Kitch and Brown as described here in above, including but not limited to the seizure of computers, electronics, documents and files unrelated and unnecessary for the matters set forth in the Affidavit for Search Warrant." (*Id*. at ¶ 57).
- "Affordable's and Dampf-Aguilar's constitutional rights were violated by the acts of the TCSO, Glanz, Huckeby, Kitch and Brown, including but not limited [to] the seizure of computers, electronics, documents and files based upon a false and misleading Affidavit for Search Warrant." (*Id*. at ¶ 58).

Plaintiffs do not allege that Glanz personally participated in obtaining or executing the search warrant, nor do Plaintiffs allege that Glanz personally participated in the arrest of Horton or Dampf-Aguilar. Instead, Plaintiffs appear to rely on a theory of supervisory liability.

In order to succeed on a supervisory liability theory, a plaintiff must allege an "affirmative link" between the supervisor and the alleged constitutional violation. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). This is because § 1983 "does not authorize liability under a theory of respondeat superior." *Id*. (quoting *Schneider*, 717 F.3d at 767). The required "affirmative link" has three related prongs: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

"Before the Supreme Court's decision in *Ashcroft v. Iqbal*, a § 1983 plaintiff had some flexibility in how to establish a supervisory defendant's personal involvement: she could do so by showing personal participation, exercise of control or direction; failure to supervise; or promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016) (internal quotation marks omitted) (citing *Dodds*, 614 F.3d at 1195). The last of those options remains a valid basis for

5

§ 1983 liability post-*Iqbal*, *see Dodds*, 614 F.3d at 1199, but the Tenth Circuit does not appear to have addressed whether allegations of a supervisory defendant's failure to supervise can satisfy *Iqbal's* stricter liability standard. Even assuming that the personal-involvement prong could be satisfied by allegations of a failure to supervise, the Court finds that Plaintiffs' single, conclusory allegation concerning Glanz's failure "to sufficiently monitor and supervise those empowered by the badge and rank bestowed upon them" is insufficient to show that Glanz's own conduct plausibly caused any constitutional deprivation. As noted above, "'naked assertion[s]' devoid of 'further factual enhancement'" do not satisfy the pleading standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Without more detailed factual allegations, Plaintiffs have failed to state a claim against Glanz in his individual capacity.[1]

### C. Vic Regalado – Official Capacity

An official capacity claim generally represents "another way of pleading an action against an entity of which the officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, the claims against Vic Regalado in his official capacity are treated as claims against Tulsa County.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694. In other words, a plaintiff cannot rely on a theory of respondeat superior to hold a local government liable under this statute. Instead, "local governments are responsible only for 'their *own* illegal acts.'" *Connick v.*

---

[1] It is not clear from the Motion to Dismiss whether Glanz has raised the defense of qualified immunity. (*See* Doc. 16 at 18-20). Because the Court finds that the Complaint has failed to state a claim against Glanz in his individual capacity under Fed. R. Civ. P. 12(b)(6), the Court need not conduct a qualified immunity analysis.

*Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Thus, in order to state a viable claim against a local government under § 1983, a plaintiff must allege "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). This policy or custom requirement distinguishes the "acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Several types of actions may constitute a municipal policy or custom, as explained by the Tenth Circuit in *Bryson v. City of Oklahoma City*:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Moreover, in order to survive a motion to dismiss, "an official capacity claim must allege sufficient facts to show that a specific policy or custom was the moving force behind the alleged violation." *Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 (10th Cir. 2012) (unpublished).

In the present case, Plaintiffs make several general statements about Tulsa County having a "personal vendetta" against them, taking "adverse action against them to benefit a competitor,"

7

"attempting to force Plaintiffs out of the bail bond business," and "exhibit[ing] a pattern of calculated, deliberate and targeted disparate treatment of Affordable, Dampf-Aguilar and Horton." (*Id*. at ¶¶ 25, 49). The only specific allegation of disparate treatment—apart from the February 2014 search and arrests at the center of this case—is that Major Shannon Clark of the TCSO is believed to have offered to assist someone in taking legal action against Dampf-Aguilar and Affordable for having him remanded to custody. (*Id*. at ¶ 24).

The Court finds that these allegations are insufficient to plausibly show a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." *See Bryson*, 627 F.3d at 788. More problematic still, Plaintiffs have failed to allege a "direct causal link" between this "pattern" of anti-competitive behavior by the County and any constitutional deprivation allegedly suffered by Plaintiffs. Though, as discussed above, Plaintiffs assert that the "TCSO and Sheriff Stanley Glanz have failed to sufficiently monitor and supervise those empowered by the badge and rank bestowed upon them by TCSO and Glanz," (Doc. 1 at ¶ 51), there are no allegations that this failure to supervise "result[ed] from 'deliberate indifference' to the injuries that may be caused." *Id*.

By failing to identify any municipal policy or custom that directly caused Plaintiffs' alleged injuries, the Complaint fails to state a claim against Sheriff Regalado in his official capacity.

**D. Count One**

Count One revolves around the February 19, 2014 search of Affordable's premises and the seizure of computers, electronics, documents, and files from those premises. The Complaint asserts that the search was illegal and based upon a "false and misleading Affidavit for Search Warrant." (Doc. 1 at ¶ 58). The Complaint also asserts that the Tulsa County officers who executed the search warrant illegally utilized a K-9 to search for evidence of illegal drugs, which was outside the scope of the warrant and not supported by probable cause. (*Id*. at ¶ 35).

8

The three individual defendants—Kitch, Huckeby, and Brown—have all raised the defense of qualified immunity. To plead a plausible claim in a case subject to the qualified immunity defense, Plaintiffs "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

After carefully reviewing the Complaint, the Court has found that Defendant Kitch is only mentioned by name in the following three allegations:

- "Defendant Kitch is a Sergeant with the Tulsa County Sheriff's Office." (Doc. 1 at ¶ 7).
- "Affordable's and Dampf-Aguilar's constitutional rights were violated by the acts of the TCSO, Glanz, Huckeby, Kitch and Brown as described herein above, including but not limited to the seizure of computers, electronics, documents and file unrelated and unnecessary for the matters set forth in the Affidavit for Search Warrant." (*Id*. at ¶ 57).
- "Affordable's and Dampf-Aguilar's constitutional rights were violated by the acts of the TCSO, Glanz, Huckeby, Kitch and Brown, including but not limited [to] the seizure of computers, documents and files based upon a false and misleading Affidavit for Search Warrant." (*Id*. at ¶ 58).

Under the standards set out by the Supreme Court in *Ashcroft v. Iqbal*, "§ 1983 liability [can] only be imposed upon those defendants whose own individual actions cause a constitutional deprivation." *Dodds*, 614 F.3d at 1200. Referring to the defendants collectively with "no distinction as to what acts are attributable to whom" makes it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.

Here, it is impossible to tell what particular acts, much less what unconstitutional acts, are attributable to Defendant Kitch. Because Plaintiffs have not met the minimal notice pleading requirements, further analysis of qualified immunity is unnecessary, and the Court finds that Kitch is entitled to qualified immunity as to Count One.

Next, Plaintiffs have made the following allegations against Defendant Huckeby:

- Huckeby led the execution of the search warrant. (Doc. 1 at ¶ 33).
- "Huckeby and approximately 10 members of the TCSO searched and confiscated numerous files, and other property, including Affordable's computers and servers." (*Id*. at ¶ 34).
- Huckeby stated that it was "upon his authority" that a K-9 was at the premises with the TCSO members during the execution of the search. (*Id*. at ¶ 37).
- Huckeby was heard stating that he wanted Dampf-Aguilar's personal computer to be seized from the premises. (*Id*. at ¶ 38).
- Huckeby made the following statements to the media following the arrest of Dampf-Aguilar: "Do you want to be bonded out by somebody who's not a felon or somebody who is a felon? Do you want to be bonded out by somebody who is a bondsman and can act legally as a bondsman? Or would you rather have, you know, your bond given to you by somebody who's not and have your bond at risk?" (*Id*. at ¶ 48).[2]

Although Plaintiffs' allegations concerning Huckeby are more specific as to his role in the search and seizure than the allegations pertaining to Kitch, the Court is still unable to conclude that Plaintiffs have alleged a plausible constitutional violation caused by Huckeby's conduct. There are no allegations that Huckeby acted unreasonably in relying on the search warrant or that he played a part in obtaining the warrant. There is no explanation for why the seizure of Dampf-Aguilar's personal computer or any other item was improper and outside of the scope of the warrant. There is also no allegation that the K-9's presence resulted in any injury to the Plaintiffs. *See Heck v. Humphrey*, 512 U.S. 477 (1994) ("In order to recover compensatory damages . . . the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury[.]"). Subsequently, the Court finds that Huckeby is entitled to qualified immunity because Plaintiffs have failed to allege facts sufficient to show that Huckeby plausibly violated their constitutional rights.

---

[2] Plaintiffs also include Huckeby in the same general allegations, quoted above, that include all the other defendants. (*See* Doc. 1 at ¶¶ 57, 58).

Lastly, Plaintiffs' Complaint contains the following factual allegations pertaining specifically to Defendant Brown's role in the alleged illegal search and seizure:

- After interrogating Scheving, Brown submitted an affidavit in support of an application for a search warrant to search Affordable's premises. (Doc. 1 at ¶ 30).
- The affidavit signed by Brown was "false and misleading." (*Id*. at ¶ 58).[3]

The Complaint does not provide further detail regarding what was false or misleading within the affidavit. In fact, Plaintiffs do not allege that Brown misrepresented or falsified the information provided to him from his interrogation of Scheving. Without more specific allegations, the Court finds that Plaintiffs have failed to allege facts sufficient to show that Brown plausibly violated their constitutional rights. As such, Brown is entitled to qualified immunity.

**E. Count Two**

**1. Arrest based on "unlawful, improper and disparate interpretation" of the statute**

In Count Two, Plaintiffs allege that Horton's and Dampf-Aguilar's constitutional rights were violated by Defendants' "unlawful, improper and disparate interpretation" of *Okla. Stat.* tit. 59, § 1311.3(A) and (B). (Doc. 1 at ¶ 62).

These statutory provisions provide as follows:

A. It shall be unlawful for any person whose license to act as a bail bondsman has been suspended, revoked, surrendered, or refused, to do or perform any of the acts of a bail bondsman. Any person convicted of violating the provisions of this subsection shall be guilty of a felony and shall be punished by a fine in an amount not exceeding Five Thousand Dollars ($5,000.00).

B. It shall be unlawful for any bail bondsman to assist, aid, or conspire with a person whose license as a bail bondsman has been suspended, revoked, surrendered, or refused, to engage in any acts as a bail bondsman. Any person convicted of

---

[3] Plaintiffs also include Brown in the same general allegations, quoted above, that include all the other defendants. (*See* Doc. 1 at ¶¶ 57, 58).

> violating the provisions of this subsection shall be guilty of a felony and shall be punished by a fine in an amount not to exceed Five Thousand Dollars ($5,000.00).

§ 1311.3(A)-(B). The statute does not define "acts of a bail bondsman." Plaintiffs argue that the statute is, thus, "unconstitutionally vague," but that it "clearly does not stand for the proposition that no person who was formerly a licensed bail bondsman, or whose license had been refused, may work for a bail bond office." (Doc. 1 at ¶ 68).

As mentioned above, the individual defendants have raised the defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity at the dismissal stage, the Court must evaluate the complaint to see if the plaintiffs have alleged facts "sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249.

In this case, Horton and Dampf-Aguilar have failed to demonstrate how they had a "clearly established" right to not be arrested under an Oklahoma statute that had not been (and has never been) determined by any court to be invalid. Nor have they demonstrated how they had a "clearly established" right to have the statute interpreted in a particular way so as not to apply to their actions. The Court, therefore, finds that Defendants Huckeby, Kitch, and Brown are entitled to qualified immunity as to this claim concerning Horton's and Dampf-Aguilar's arrests.

### 2. Excessive Bail

Also under Count Two, Plaintiff Horton asserts that he "was initially booked into the Tulsa County Jail to be held without bond, in violation of the VII Amendment to the United States

Constitution prohibition against excessive bail." (Doc. 1 at ¶ 66). Assuming Horton meant to cite the Eighth Amendment, not the Seventh, the Court nonetheless finds that he has failed to state a valid claim for excessive bail against any of the defendants in this case.

Under the standards set out by the Supreme Court in *Ashcroft v. Iqbal*, "§ 1983 liability [can] only be imposed upon those defendants whose own individual actions cause a constitutional deprivation." *Dodds*, 614 F.3d at 1200. There are no allegations in the Complaint that any of the individual defendants were involved in the decision to detain Horton without bail. For this reason, the Plaintiffs' excessive bail claim must be dismissed. *See Masad v. Nanney*, No. 14-cv-00577-MJW, 2014 WL 4265848, at *7 (D. Colo. Aug. 27, 2014) (dismissing excessive bail claims against individual deputies when the plaintiff had not alleged any facts from which it could be inferred that their conduct was the but-for cause of the excessive bail); *Potter v. Clark*, 497 F.2d 1206, 1208 (7th Cir. 1974) (affirming dismissal of excessive bail claim against sheriff when he "was not the one who had responsibility to set the bail").

**F. Count Three – Declaratory Judgment**

Lastly, in Count Three of the Complaint, Plaintiffs seek a declaratory judgment by this Court that *Okla. Stat.* tit. 59, § 1311.3(A) and (B) are unconstitutionally vague. Plaintiffs argue that the statutory language is "too vague to afford a practicable test for a licensee to make a distinction between those acts which are permissible and those which are not." (Doc. 1 at ¶ 77). They further assert that the statute "does not convey a sufficiently definite warning so that men and women of common intelligence or understanding will not have to guess at the statute's meaning." (*Id*. at ¶ 78).

Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further

13

relief is or could be sought." Defendants argue that Plaintiffs have failed to allege an actual controversy, and this Court agrees. The U.S. Supreme Court has explained that the phrase "case of actual controversy" in § 2201 "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the U.S. Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941), *quoted in MedImmune, Inc.*, 549 U.S. at 127.

Here, the Complaint states that the charges against Horton and Dampf-Aguilar under § 1131.3 are no longer pending after the Tulsa County District Court found that the prosecution lacked probable cause to charge them with a crime. (Doc. 1 at ¶ 54). In *Steffel v. Thompson*, the Supreme Court held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute." 415 U.S. 452, 475 (1974) (emphasis added). However, the Court has found no allegations in the Complaint that demonstrate a genuine threat of enforcement of this statute. For this reason, the Court finds that Count Three must be dismissed for lack of justiciability.

IV. **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss Complaint (Doc. 16) is **granted**.

SO ORDERED this 3rd of May, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14